IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RODNEY DAY and KEITH BOWLES,**<br>     **Plaintiffs,**<br><br>          **v.**<br><br>**SEARS,**<br>          **Defendant.** | **CIVIL ACTION**<br><br>**No. 12-cv-6474** |

MEMORANDUM OF LAW RE DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

**Baylson, J.**                                                                              **January 15, 2014**

I.     **Introduction**

Plaintiffs Rodney Day and Keith Bowles, black males, were terminated from their

employment as sales associates at the Sears department store located in Whitehall, Pennsylvania

on August 7, 2009.  Plaintiffs filed a complaint with the United States Equal Employment

Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission

("PHRC") on November 6, 2009, claiming that they were terminated from their employment

because of their race.  Plaintiffs then brought a race discrimination action against Defendant

under Title VII, 42 U.S.C. § 2000e *et seq*., and the Pennsylvania Human Relations Act

("PHRA"), 43 Pa. Stat. § 951 *et seq*., in the Court of Common Pleas of Lehigh County,

Pennsylvania on July 9, 2012.  Defendant removed that action to federal court pursuant to this

Court's federal question jurisdiction.  28 U.S.C. § 1441.

Defendant filed its Answer to Plaintiffs' complaint on November 16, 2012. DE 2.  On

July 15, 2013, Defendant moved for summary judgment.  DE 15.  Plaintiffs responded in

opposition to Defendant's Motion on August 15, 2013.  DE 17.  And Defendant replied to

Plaintiffs' opposition on August 22, 2013.  DE 18.  The Court held oral argument on Defendant's

Motion on November 26, 2013.

## II.     Undisputed Facts

When selling a large item at Defendant's store, the size of the merchandise requires that it

be delivered directly to the customer's home.  Defendant has programmed its registers to

automatically apply a delivery fee whenever these larger items are rung up at the store's cash

register.  DE 15-1 ¶ 13.  Defendant equips each cash register with a function that enables a sales

associate to "link" two different large merchandise transactions made by one customer.  DE 15-1

¶ 18.  "Linking" two transactions waives one of the delivery fees associated with the two

purchases.  DE 15-1 ¶18.  For example, if a customer buys both a washing machine and a dryer

(each an item that would carry a delivery fee if purchased individually), a sales associate could

waive one delivery fee so that the customer would only be charged for one delivery.  DE 15-1 ¶

19.  Associates can also waive a delivery fee by getting manager approval.[1]

Plaintiff Day began working for Defendant in February 1994.  DE 15-1 ¶ 3.  Plaintiff

Bowles began working for Defendant sometime in 2000.   DE 15-1 ¶ 8.  Colin Hersch was the

Loss Prevention Manager for Defendant from November 2006 to April 2010.  On July 1, 2009,

Hersch received an email from his superiors alerting him to potential abuses of the "linking"

procedures.  The e-mail indicated that:

> Associates have the ability to ring multiple delivery transactions and only charge
> the customer one delivery fee.  This is accomplished by "linking" the free
> delivery sales check with the sales check that contains the delivery fee.  We
> expose ourselves to potential loss on this issue as many associates are aware that
> any 12 digit number can be entered as the "Linking" sales check.  After tracing
> some of the "Linking" sales checks many cases were noted where they ended up

---

[1]  It is a contested issue whether there were other ways to waive a delivery fee, such as by using a
manager approval card.

being completely false numbers, traced back to "No Sales" or other non-selling
activity, or were sales to other customers not related to any delivery.

DE 15-2 at 161.

This sparked an investigation into the reasons behind the individual fee waivers granted

by Plaintiffs.  DE 15-1 ¶ 25.  Hersch analyzed each associate's linked transactions.  DE 15-1 ¶

25.  Based on this investigation, he identified Plaintiffs as the employees that most frequently

issued delivery fees waivers.  DE 15-1 ¶ 26.  Hersch also discovered that Plaintiffs were linking

sales checks where (1) delivery was not required; (2) previous purchases were made by different

customers; (3) previous purchases were being delivered to a different address; and (4) the

previous sales check represented a no sale transaction.[2]  DE 15-2 at 158.

On July 24, 2009, Plaintiffs were interviewed by management about issuing fee waivers.

During these interviews, they did not dispute that they "linked" transactions.  Plaintiff Day stated

that he was empowered to remove the delivery fee on a case-by-case basis and did not need

manager approval to grant the delivery fee waivers.  DE 15-1 ¶ 35.  Plaintiff Day also stated that

he linked sales transactions that did not exist in order to give free delivery and linked

transactions from one customer to transactions of other, unrelated customers.  DE 15-1 ¶¶ 36, 37.

In Plaintiff Bowles's interview, he stated that he linked sales checks by filling in random

numbers at the end of a transaction to waive a delivery fee and did not get manager's approval to

do so. DE 15-1 ¶¶ 39, 40.  Plaintiffs also stated that they were given manager approval cards,

which enabled them to waive delivery fees.[3]

---

[2]  Plaintiffs disputed this fact in their answer to Defendant's Statement of Undisputed Facts, but
they point to no evidence that contradicts Defendant's citation to the record.

[3]  Although Defendant does not dispute that Plaintiffs were given manager approval cards, the
parties do dispute whether they empowered Plaintiffs to waive delivery fees.  *See* DE 18-2 at 4 (Tobia
deposition); DE 15-2 at 122 (Bowles deposition); DE 17-1 at 7 (Hartenstine deposition).

After consulting with its human resources department, Defendant terminated Plaintiffs. Their manager informed them that they were being terminated because of the integrity issue raised by the manner in which they gave fee waivers.  DE 15-2 ¶ 52.

## III.    Disputed Facts

The central factual dispute turns on the authority granted to Plaintiffs and how they were instructed to use that authority.  Plaintiffs assert that they had manager approval cards and that these cards enabled them to waive delivery fees.  Defendant does not contest that Plaintiffs were issued cards, but does contest the scope of the power that these cards granted them.  Thus, the following are disputed questions in this case:

(1)     What did these manager approval cards enable Plaintiffs to do;

(2)     Did they take the place of getting manager approval for delivery fee waivers; and

(3)     What instructions, if any, were given about using the manager approval cards?

The thrust of Plaintiffs' evidence is that they were given these cards without any instruction save that they should not let a sale walk over a delivery fee.  Defendant's evidence indicates that these cards did not empower them to waive delivery fees at all—the only way to waive a delivery fee is to get approval from a manager.

## IV.    Legal Standard

Plaintiffs assert they are pursuing their Title VII and PHRA claims under theories of disparate treatment and hostile work environment.[4]  Defendant's Motion for Summary Judgment analyzes these claims exclusively under the burden-shifting analysis provided in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Plaintiffs contend, however, that this is first and

---

[4]  To bring a hostile work environment claim, Plaintiffs must show that they have suffered pervasive and regular discrimination because of their race.  *Huston v. Procter & Gamble Paper Prods. Corp.,* 568 F.3d 100, 104 (3d Cir. 2009).  Because Plaintiffs only argue one instance of racial discrimination—racially-motivated employment termination—their hostile work environment theory fails as a matter of law.

foremost a mixed-motive case.  They argue in the alternative that their claims survive even under a *McDonnell Douglas* analysis.  Because Plaintiffs rely on mixed-motive and *McDonnell Douglas* analyses, the Court evaluates their claims under both approaches.

### A.     Mixed-Motive Analysis

The "mixed-motive" theory was first introduced in Justice O'Connor's concurring opinion in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), which was the controlling opinion among a fractured court.  Justice O'Connor stated that when a plaintiff alleging unlawful termination presents "direct evidence" that discriminatory animus was a substantial factor in the decision to fire him, the burden on the issue of causation shifts to the employer, who must prove that it would have fired the plaintiff in the absence of the impermissible motivating factor.  *Id.* at 265-66.  This ruling, however, raised questions about what exactly constituted "direct evidence," particularly whether circumstantial evidence could be considered in a mixed-motive case.  *See, e.g.*, *Fernandes v. Costa Bros. Masonry,* 199 F.3d 572, 581-82 (1st Cir. 1999) (surveying circuit courts' different approaches), abrogated by *Desert Palace, Inc. v.* Costa, 539 U.S. 90 (2003).

Congress responded to the *Price Waterhouse* ruling two years later with the Civil Rights Act of 1991, which added statutory language to Title VII describing how to establish an unlawful employment practice when discriminatory animus was a motivating factor in an employee's termination.  42 U.S.C. § 2000e-2(m) (indicating that a plaintiff may establish an unlawful employment practice by demonstrating "that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice").

As the Supreme Court held in *Desert Palace,* 42 U.S.C. § 2000e-2(m) clarified that a plaintiff's evidentiary burden at trial for a "mixed-motive" instruction could be satisfied by direct

*or* circumstantial evidence.  539 U.S. at 100-01 (holding that a "plaintiff need only present

sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that

race, color, religion, sex, or national origin was a motivating factor for any employment practice"

(internal quotation marks omitted)).  Thus, even a plaintiff who only presents circumstantial

evidence of discrimination may proceed under a mixed-motive theory if he presents sufficient

evidence to enable a reasonable jury to conclude that his race was a motivating factor behind an

adverse employment action.  *See id.* at 101 (holding that "no heightened showing is required

under § 2000e-2(m)").  A defendant in a mixed motive case has a limited affirmative defense if it

can "demonstrate that it would have taken the same action in the absence of the impermissible

motivating factor."  *Id.* at 95.[5]

### B.    *McDonnell Douglas* Analysis

Plaintiffs also contend they can survive summary judgment under the framework

established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), and *Texas Department*

*of Community Affairs v. Burdine,* 450 U.S. 248 (1981).

The *McDonnell Douglas* framework is a three-part, burden-shifting analysis.  First, the

plaintiff carries the initial burden of establishing a prima facie case of unlawful discrimination.

*McDonnell Douglas,* 411 U.S. at 802. Second, if a prima facie case is established, the defendant

---

[5]  A mixed-motive showing typically occurs at trial.  The Third Circuit has not definitively stated whether mixed-motive analysis is appropriate at summary judgment.  *See, e.g.*, *Houser v. Carpenter Tech. Corp.*, 216 F. App'x 263, 265, 2007 WL 490994 (3d Cir. 2007) ("Even if a 'mixed motive' analysis were appropriate at the summary judgment stage, which our court has not addressed, Houser cannot succeed under a 'mixed motives' approach."); *Rouse v. II-VI Inc.*, 08-3922, 2009 WL 1337144 (3d Cir. May 14, 2009) ("We note that the 'mixed motive' standard is normally used in instructing juries.  However, assuming arguendo that a 'mixed motive' analysis is proper at the summary judgment stage, we agree with the District Court that Rouse did not establish a triable issue."); *but see Garges v. People's Light & Theatre Co.*, 13-1160, 2013 WL 3481723 (3d Cir. June 28, 2013) ("Summary judgment also was proper on Garges' Title VII 'mixed motive' claim.").  Because Plaintiffs can withstand summary judgment under the *McDonnell Douglas* framework, this issue is of no moment.

must articulate legitimate, nondiscriminatory reasons for the plaintiff's adverse treatment. *Id.* at 802–803. Third, if the defendant articulates legitimate, nondiscriminatory reasons for the plaintiff's adverse treatment, the plaintiff must demonstrate that the reasons given by the defendant are merely a pretext for unlawful employment discrimination. *Id.* at 804–805.

The existence of a prima facie case is a question of law. To establish a prima facie case of employment discrimination, Plaintiffs must point to evidence in the record that shows: (1) Plaintiffs belong to a protected class; (2) they were qualified for their position; (3) they were subject to an adverse employment action despite being qualified (4) under circumstances that raise an inference of unlawful discriminatory action. *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797-98 (3d Cir. 2003). The prima facie case, if established, "raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on consideration of impermissible factors." *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978). "The burden of establishing a prima facie case of disparate treatment is not onerous." *Burdine*, 450 U.S. at 253-54.

The first three elements of a prima facie case are not in dispute. At issue is only whether Plaintiffs have established the fourth prong. A plaintiff may demonstrate that they were terminated under circumstances that raise an inference of unlawful discrimination by showing that "similarly situated employees outside the protected class received more favorable treatment." *Horton v. Nicholson,* 435 F. Supp. 2d 429, 434 (E.D. Pa. 2006). Similarly situated employees are those who "have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Ogden v. Keystone Residence,* 226 F. Supp. 2d 588, 603 (M.D. Pa. 2002); *see also Red v. Potter,*

211 Fed. Appx. 82, 84 (3d Cir. 2006) (stating that "in order to show that an employee is 'similarly situated,' all of the relevant aspects of employment need to be nearly identical").  The fact that some members of a protected class were treated worse than some members of a non-protected class is insufficient to establish an inference of discrimination.  *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 646 (3d Cir. 1998).

The prima facie test for disparate treatment is "flexible and must be tailored to fit the specific context in which it is applied," *Sarullo*, 352 F.3d at 798.  Thus, a failure to demonstrate differing treatment for a similarly-situated member of a non-protected class is not fatal to a plaintiff's claims.  *See Anderson v. Wachovia Mortgage Corp.*, 621 F.3d 261, 272 (3d Cir. 2010) ("We have repeatedly stated that comparative, or competitive, evidence is not a necessary component of a discrimination plaintiff's prima facie case."); *Matczak v. Frankford Candy & Chocolate Co.,* 136 F.3d 933, 939 (3d Cir. 1997) ("By holding that favorable treatment outside the protected class is an 'alternative' element to a prima facie case, we [have] made clear that this element can be present but by no means must be present.").  A plaintiff can satisfy the fourth prong "so long as in some other way they are able to show circumstances which give rise to an inference of unlawful discrimination." *Anderson*, 621 F.3d at 274.

If Plaintiff successfully demonstrates a prima facie case, Defendant must offer a legitimate, non-discriminatory reason for terminating Plaintiffs.  This burden is "relatively light and is satisfied if the employer provides evidence, which, if true, would permit a conclusion that it took the adverse employment action for a nondiscriminatory reason." *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013).  At this stage, "the defendant need not prove that the articulated reason actually motivated its conduct." *Shellenberger v. Summit Bancorp, Inc.,* 318 F.3d 183, 189 (3d Cir. 2003).

If Defendant offers a legitimate, nondiscriminatory reason for Plaintiffs' termination, the

*McDonnell Douglas* analysis shifts the burden of production back to Plaintiffs to provide

evidence "from which a factfinder could reasonably infer that the employer's proffered

justification is merely a pretext for discrimination." *Burton*, 707 F.3d at 426-27. The plaintiff

must make this showing of pretext to defeat a motion for summary judgment. To make a

showing of pretext, "the plaintiff must point to some evidence, direct or circumstantial, from

which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate

reasons or (2) believe that an invidious discriminatory reason was more likely than not a

motivating or determinative cause of the employer's action." *Fuentes v. Perskie,* 32 F.3d 759*,*

764 (3d Cir. 1994).

In a recent opinion, the Third Circuit succinctly summarized why presenting evidence

undermining a defendant's legitimate, nondiscriminatory reason was sufficient to survive

summary judgment.

> The plaintiff's evidence, if it relates to the credibility of the employer's proffered
> justification, 'must demonstrate such weaknesses, implausibilities,
> inconsistencies, incoherencies, or contradictions in the employer's proffered
> legitimate reasons for its action that a reasonable factfinder could rationally find
> them 'unworthy of credence.' [I]f a plaintiff has come forward with sufficient
> evidence to allow a finder of fact to discredit the employer's proffered
> justification, she need not present additional evidence of discrimination beyond
> her prima facie case to survive summary judgment. This is because the factfinder
> may infer from the combination of the prima facie case, and its own rejection of
> the employer's proffered reason, that the employer engaged in the adverse
> employment action for an invidious reason. The plaintiff is therefore not required
> to produce direct evidence of discriminatory intent to demonstrate pretext and
> survive a motion for summary judgment.

*Burton*, 707 F.3d at 427 (citations omitted).

**V.      Discussion**

Because Plaintiffs have satisfied their burden under the *McDonnell Douglas* test, and

satisfaction of this burden influences the analysis under the mixed-motive test, the Court will

discuss *McDonnell Douglas* first.

      **A.      McDonnell Douglas Analysis**

Plaintiffs have presented evidence sufficient to state a prima facie case of discrimination.

As African Americans, Plaintiffs are members of a protected class.  Because they occupied their

former position for a number of years, they have shown that they were qualified to hold it.  And

their firing constitutes an adverse employment action.  Finally, Plaintiffs have shown that they

were fired under circumstances that raise an inference of unlawful discriminatory action.

Although Plaintiffs do not show that they were treated differently from someone similarly

situated in their position but outside their protected class, this kind of showing is not required to

establish a prima facie case of discrimination.  *Matczak,* 136 F.3d at 939 ("By holding that

favorable treatment outside the protected class is an 'alternative' element to a prima facie case,

we [have] made clear that this element can be present but by no means must be present.").

Instead, Plaintiffs have pointed to the following circumstances which support an inference of

unlawful discrimination: (1) they were issued manager approval cards, DE 17-3 at 8; (2) these

manager approval cards gave them authority to waive delivery fees, DE 17-3 at 10, DE 15-1 ¶

35; (3) they were encouraged to waive delivery fees to save a sale, DE 17-3 at 11; and (4) they

were terminated for exercising the authority given to them to waive delivery fees, DE 15-2 ¶ 52.

These circumstances raise an inference of discrimination because "these acts, if otherwise

unexplained, are more likely than not based on consideration of impermissible factors."  *Furnco*,

438 U.S. at 577.

Because Plaintiffs have made out a prima facie case of discrimination, the burden now shifts to Defendant to present a legitimate, nondiscriminatory reason for firing Plaintiffs. Defendant argues that Plaintiffs were terminated for violating the company's Integrity policy, which states that employees should not submit false or misleading information. DE 15-2 at 73-74. According to Defendant, Plaintiffs submitted false and misleading information by linking fake or unrelated transactions to grant delivery fee waivers and were therefore terminated. This is a sufficient justification under *McDonnell Douglas*.

The burden now shifts to Plaintiffs to point to some evidence, direct or circumstantial, that suggests Defendant's justification is pretextual. Plaintiffs attempt to satisfy their burden by pointing to evidence from which a reasonable factfinder could disbelieve Defendant's justification for firing Plaintiffs. *Fuentes*, 32 F.3d at 764.

Defendant claims that Plaintiffs have not presented any evidence that undermines their legitimate, nondiscriminatory reason. Plaintiffs, however, have martialed sufficient evidence to create a genuine issue of material fact about whether their manager cards authorized them to waive delivery fees. This disputed issue, if found in Plaintiffs' favor, would permit a reasonable juror to find that Defendant's justification was pretextual.

The manager approval card issue is critical to evaluating whether Defendant's justification is worthy of credence. If the manager approval cards did allow Plaintiffs to grant delivery fee waivers, then a reasonable factfinder could conclude that Defendant's justification is pretextual. If the cards authorized Plaintiffs to waive fees, then Defendant fired Plaintiffs for doing something that Defendant empowered Plaintiffs to do. This scenario embodies the kind of implausible, incoherent, and contradictory circumstance that warrants rejecting a proffered legitimate, nondiscriminatory reason. *Burton*, 707 F.3d at 427. If, however, the cards did not

allow Plaintiffs to grant delivery fee waivers, then Defendant's justification is internally

consistent, and no other grounds exist in the record to question its veracity.

Defendant, of course, argues that the manager approval cards did not authorize delivery

fees waivers and cites the deposition of Sears employee Joseph Tobia for support.  DE 18-2 at 4.

Tobia's deposition, however, repeatedly contradicts that statement.  Tobia's testimony indicates

that Sears associates were told not to let a sale walk because of a delivery fee, DE 17-3 at 11;

that Plaintiffs were given manager approval cards in response to the excessive delay experienced

by customers when employees had to seek out a manager to grant a fee waiver in the middle of

completing a sale, DE 17-3 at 10; that Plaintiffs waived delivery fees, DE 17-3 at 9; and that

Tobia would go to Plaintiffs to have them waive fees for him, DE 17-3 at 8.  In addition to

Tobia's deposition testimony, Plaintiffs' position on the manager approval cards is supported by

the deposition testimony of Joseph Hartenstine, DE 17-1 at 7-8, and the affidavits of both

Plaintiffs, DE 17-5 ¶ 2; 17-6 ¶ 2.  Defendant also acknowledged at oral argument that there was

no written policy about delivery fee waivers or the use of the manager approval cards, which is

some corroboration of Plaintiffs' claim that the only instruction they were given was to not let a

sale walk because of a delivery fee.

Defendant attempts to undermine Plaintiffs' evidence by arguing that Plaintiff Bowles

knew he was violating the company's Integrity policy because he admitted that he was doing

something wrong when he granted delivery fee waivers.  However, Plaintiff Bowles's statement

actually speaks only to how *other* associates would regard their conduct if they had granted fee

waivers themselves.  In other words, Bowles's deposition testimony indicates that other

associates did not grant fee waivers in the way he did because they probably knew it would be

wrong.  DE 15-2 at 123.  Read in the light most favorable to the Plaintiffs, as required for this

Motion, this indicates, at best, that associates would know granting fee waivers in the way

Bowles did would be wrong because, unlike Bowles, they did not have manager approval cards.

This statement does not constitute a recognition that *Bowles* thought what he was doing was in

violation of the company Integrity policy because he, of course, had a manager approval card.

Defendant also argues that, if Plaintiffs had the authority to grant delivery fee waivers

through their manager approval cards, then there would be no need to make up false transaction

data to link other deliveries.  This argument has some force.  However, the record is substantially

underdeveloped for it to carry the Motion.  The record is silent on (1) how manager approval

cards operate to waive fees other than delivery fee waivers; (2) how managers would input a fee

waiver into the computer system when they give permission to waive a fee; and (3) whether

certain fee waivers require some data entry into the computer system.  It is possible that swiping

a manager approval card requires no data entry at all, which would add compelling force to

Defendant's argument about the impropriety of Plaintiffs' transaction-linking behavior.  On the

other hand, it is possible that Defendant's computer system requires the entry of transaction

linking data, even when managers give permission to waive a delivery fee.  Whatever the

practice, the record does not speak to it.  Therefore, Defendant's argument is not fully developed

and therefore unable to sustain the Motion.

Defendant also makes various other arguments concerning the lack of a discriminatory

motive for terminating plaintiffs, such as pointing to evidence that shows (1) the decision to

review delivery fee waivers was initiated at the corporate level and (2) other employees that are

not members of a protected class were terminated for improperly granting delivery fee waivers at

other stores.  Defendant, however, has failed to present evidence that undermines or discredits

Plaintiffs' evidence.  Where there is conflicting evidence on a material issue of fact, summary

judgment is improper.  A jury may find this evidence credible and persuasive, but it does not allow for summary judgment.

Based on a review of the record, a reasonable factfinder could conclude that the manager approval cards authorized Plaintiffs to waive delivery fees.  From this finding, a reasonable factfinder could also conclude that Defendant's proffered legitimate, nondiscriminatory reason for firing Plaintiffs is unworthy of credence.  Accordingly, Plaintiffs have satisfied their burden under *McDonnell Douglas*.

### B.      Mixed-Motive Analysis

Plaintiffs have presented sufficient evidence in the record to create a genuine issue of material fact that would permit a reasonable factfinder to disbelieve Defendant's proffered justification for firing Plaintiffs.  A finding that a purported legitimate, nondiscriminatory reason is unworthy of credence constitutes circumstantial evidence of intentional discrimination.  *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 147 (2000) ("Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive.").  Because a reasonable factfinder could make such a finding, it could also conclude that Plaintiffs' race was a motivating factor for their termination.  *Desert Palace*, 539 U.S. at 100-01.  This is sufficient to survive summary judgment under a mixed-motive theory of discrimination.  42 U.S.C. § 2000e-2(m).

### VI.      Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment is DENIED.  An appropriate order follows.

O:\CIVIL 12\12-6474 day v. sears\Memo of Law re Ds SJ Motion 1.15.14.docx